UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

(Miami Division)

Case Number:

VICTOR IGWE,

      Plaintiff,

vs.

CITY OF MIAMI,

      Defendant.

_____/

## <u>Complaint — Jury Trial Demanded</u>

Plaintiff, Victor Igwe, sues defendant City of Miami, and alleges:

### Introduction

1.     This is an action by Victor Igwe, former Independent Auditor of the City of Miami, whom the City Commission failed to reappoint in 2011 because of his testimony to the Securities and Exchange Commission ("SEC") about whether the City's issuance of municipal bonds constituted securities fraud, and whom the City Commission again rejected for the IAG position in 2012.  The City violated Mr. Igwe's rights under the Dodd-Frank Wall Street Reform and Consumer Protection Act, 15 U.S.C. §§ 78u-6 ("Dodd-Frank Act"), and under the First Amendment to the United States

**The Amlong Firm** ● 500 Northeast Fourth Street ● Fort Lauderdale, FL  33301 ● 954.462.1983

Constitution.   He sues under the Dodd-Frank Act and 42 U.S.C. 1983 for damages, injunctive relief, attorney's fees and litigation expenses.

## Jurisdiction and Venue

2.      This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the claims asserted arise under 15 U.S.C. § 78u-6, 42 U.S.C. § 1983, and the First Amendment.

3.      Venue is proper in this Court because the City of Miami is located within the Southern District of Florida, and because the acts and omissions giving rise to plaintiff's claims occurred in Miami-Dade County.

## Parties

4.      Plaintiff, Victor Igwe, former Independent Auditor for the City of Miami, was at all times material:

  a.      a "whistleblower" as defined by the Dodd-Frank Act, and

  b.      protected under § 1983 because he provided truthful sworn testimony pursuant to an SEC subpoena, which testimony was not a part of his ordinary job responsibilities as Independent Auditor General.

5.      Defendant City of Miami ("City") is a Florida municipal corporation, and:

  a.      an employer as envisioned by § 78u-6, and

  b.      a "person" under § 1983.

## General Allegations

6.      Mr. Igwe began working for the City of Miami in 1999 as Director of Internal Audits.

7.    The Miami City Commission in 2003 appointed Mr. Igwe to the position of Independent Auditor General of the City of Miami ("IAG"), which the voters had created through an amendment to the City Charter.

8.    Although the City Commission had taken no action on or before May 1, 2007 regarding his reappointment, Mr. Igwe continued serving as IAG and continued receiving his salary and benefits.

9.    The City Commission reappointed Mr. Igwe July 26, 2007, retroactively to May 1.

10.    As IAG, plaintiff's job was to conduct financial, operational, and compliance audits.  The duties and powers of the IAG are prescribed at section 48(c) of the City Charter, i.e.,

> The IAG shall be responsible to provide independent oversight of audit functions, and for the performance of such other duties as may be assigned by the city commission or any member of the city commission.  To the degree necessary to fulfill the responsibilities of the office, the IAG shall have the power and authority to:
>
> (1)  Examine city audit functions and accounting systems, provide budget and legislative analysis, conduct financial, operational, compliance, single act and performance audits of city government, officials, and independent agencies, with reports submitted to the city commission as deemed necessary by the IAG or as may be required by the city commission, from time to time, and copied to the administration.
>
> (2) Have free and unrestricted access to city government employees, officials, records and reports and where appropriate, require all branches, departments, agencies and officials of city government to provide oral and written reports and to produce documents, files and other records.

(3) Render assistance to external auditors retained by the city commission.  Such assistance shall be limited to special audits or limited examinations ordered by the city commission.

11.    In or around 2010 the SEC, based in part on audits through which Mr. Igwe had exposed the City's use for special-fund revenues for paying general-fund expenses and then covering it up, began an investigation into whether the City had violated certain anti-fraud provisions of federal securities laws by falsely portraying itself to the investment community as being financially solvent.

12.    The SEC, to which Mr. Igwe had begun to furnish information concerning its investigation, subpoenaed him to testify before it in or around April and November 2010.  Each subpoena was directed to plaintiff personally at his home address.

13.    Pursuant to these subpoenas, on personal knowledge and not on behalf of the City, Mr. Igwe testified that the City had:

a.    illegally transferred restricted revenues from capital project funds and other restricted-use funds to the City's General Revenue Fund in an effort to cover up the City's financial problems;

b.    falsely and misleadingly asserted that decreased General Fund balances were offset by "unused" capital project appropriations because: (1) the unused funds did not originate from the General Fund, as

claimed by the City, and (2) there were other large capital-project shortages that the improperly transferred monies were sorely needed to fund;

       c.    fraudulently transferred the capital-project and restricted-use funds from ongoing activities that continued to incur expenditures, notwithstanding the City's assertion that said projects were complete;

       d.    transferred back to the capital-project funds monies from the General Fund that were fraudulently transferred in the first instance, and

       e.    made material misrepresentations in its Comprehensive Annual Financial Reports ("CAFR") for fiscal years 2007 and 2008 concerning the fraudulent inter-fund transfers to cover up actual losses in the General Fund.

14.    The SEC in 2013 filed a five-count complaint, Case No. 1:13-cv-22600-CMA, against the City of Miami and former Budget Director Michael Boudreaux, alleging

       a.    Fraud in Violation of section 17(a)(1) of the Securities Act;

       b.    Fraud in Violation of Sections 17(a)(2) and (3) of the Securities Act,

       c.    Fraud in Violation of Section 10(b) of the Exchange Act and Rule 10b-5;

       d.    Aiding and Abetting the City's Violation of Section 10(b) of the Exchange Act and Rule 10b-5; and

e.      Violations of Commission Cease and Desist Order.

15.     In April 2011 the City Commission, rather than voting on plaintiff's reappointment, extended by only 60 days plaintiff's appointment as IAG, during which time the Commission instructed, and Commissioner Frank Carollo agreed, that Mr. Carollo, a certified public accountant, would meet with Mr. Igwe during those 60 days to evaluate his performance and report back to the Commission.

16.     The Commission precluded Mr. Igwe from issuing any audit findings during those 60 days.

17.     Although Mr. Igwe attempted repeatedly to meet with Mr. Carollo, Mr. Carollo refused to meet with him.

18.     On or around June 27, 2011, prior to the expiration of the 60-day extension, City administration officials escorted Mr. Igwe out of his office, without notice, telling him that the City no-longer had the authority to pay his salary or expenses.  City officials confiscated plaintiff's office and filing cabinet keys, computer, and city identification cards and instructed Mr. Igwe to leave.

19.     In or around August 2011 the City announced an opening for the position of IAG, listing as minimum requirements the following:

Bachelor's degree in accounting, finance, business administration or closely related field, from an accredited college or university and a State of Florida, Certified Public Accountant (CPA) license pursuant to

Chapter 473, Florida Statutes, plus a minimum of 10 years of experience, which demonstrates professional competence and thorough knowledge of the generally accepted government accounting/auditing standards, are required.  Technical proficiency in advanced auditing techniques and methodology, as well as extensive knowledge of government accounting and auditing is also required. *A master's degree is preferred.* (Emphasis in original).

20.     During a Commission meeting in or around August 2011 Mr. Carollo indicated that he intended to seek input from the City's Audit Advisory Committee as to a recommendation for IAG.

21.     Previously, in or around June 2011, the City Commission's Audit Advisory Committee had already unanimously recommended that Mr. Igwe be reappointed.  The Commission appointed a new committee to assist with the selection process.

22.     Following the job announcement, in or around September 2011, Mr. Igwe submitted his application to the City, and received a rejection letter on or around January 9, 2012 — notwithstanding that he was fully qualified for the job.

23.     About two weeks later, on or around January 26, 2012, because the City no longer had any applicants who could satisfy the 10-year government-auditing experience requirement, the City withdrew its earlier job announcement and reverted to the minimum City Charter requirements:

[T]he IAG shall have and maintain an active license, shall be certified under the public accountancy law in Florida, shall have a degree in public administration or in lieu of such degree shall have at least five

years experience in public administration and shall have sufficient experience in governmental accounting and auditing practices.

### Count I:  Dodd-Frank Whistleblower Protection

24.     Mr. Igwe realleges and adopts, as if fully set forth in Count I, the allegations of ¶¶  1-3, 4(a), 5(a) and 6-23.

25.     Mr. Igwe provided testimony and information to the SEC and assisted the SEC with its investigation and subsequent judicial action, as more particularly alleged in ¶¶ 11, 12, 13(a)-(e), and 14, regarding what he reasonably believed to be securities law violations or possible securities law violations that had occurred or were ongoing, and were subject to the jurisdiction of the SEC.

26.     The City, in refusing to reappoint Mr. Igwe in April-June 2011 and refusing to hire Mr. Igwe for the IAG position in 2012, as more particularly alleged in ¶¶ 15-23, retaliated and discriminated against Mr. Igwe because of his lawful conduct, as more particularly described in ¶ 25.

27.     As a direct, natural and proximate result of the City's actions towards Mr. Igwe, Mr. Igwe has suffered damages, including but not limited to lost earnings, litigation costs and attorneys' fees.

WHEREFORE, Plaintiff, Victor Igwe, prays that this Court will grant judgment for him, and against Defendant, City of Miami:

*One*, enjoining the City, both preliminarily and permanently, from discriminating against Mr. Igwe because he engaged in activity protected under the Dodd-Frank Act, and affirmatively to make him whole by restoring him to the position of IAG with all seniority and benefits, or, if that is not effective as a make-whole remedy, awarding him front pay;

*Two*, granting judgment against the City for damages, including double back pay, attorney's fees and litigation expenses, and

*Three*, granting such other and further relief as is just.

## Count II: Violation of 42 U.S.C. § 1983

28.     Mr. Igwe realleges and adopts, as if fully set forth in Count II, the allegations of ¶¶ 1-3, 4(b), 5(b), 6-13 and 15-23.

29.     As regards the appointment or reappointent of the Independent Auditor General, the Miami City Commission is the final policy maker for the City of Miami.

30.     Mr. Igwe's cooperation with and truthful, subpoenaed testimony before, the SEC about the City's and its finance director's behavior, as more particularly alleged in ¶¶ 11, 12 and 13(a)-(e), was, as a matter of law, speech protected by the First Amendment to the United States Constitution.

31.     Mr. Igwe's cooperation with and testimony before the SEC was a substantial or motivating factor in the Miami City Commission's:

a.      refusal to reappoint him — indeed, even to put his reappointment to a vote — in April-June 2011, as more particularly alleged in ¶¶ 15-18;

b.      refusal to consider him when he applied after the job was advertised — even though none of the candidates whom it ultimately did consider met the jobs initial minimum qualifications, as more particularly alleged in ¶¶ 19-23.

32.     As a direct, natural and proximate result of the Miami City Commissions actions towards Mr. Igwe, Mr. Igwe has suffered damages, including but not limited to:

a.      lost earnings;

b.      diminishment of earning capacity; and

c.      emotional distress and mental anguish.

WHEREFORE, Plaintiff, Victor Igwe, prays that this Court will grant judgment for him, and against Defendant, City of Miami:

**One**, enjoining the City, both preliminarily and permanently, from discriminating against Mr. Igwe because he engaged in activity protected under the Dodd-Frank Act, and affirmatively to make him whole by restoring him to the position of IAG with all seniority and benefits, or, if that is not effective as a make-whole remedy, awarding him front pay;

*Two*, granting judgment against the City for damages, including back pay, attorney's fees and litigation expenses, and

*Three*, granting such other and further relief as is just.

## Demand for Jury Trial

Plaintiff, demand Victor Igwe, demands trial by jury on all issues so triable.

Respectfully submitted,

*/s/ Ryan C. Brenton*
WILLIAM R. AMLONG
Florida Bar No. 470228
WRAmlong@TheAmlongFirm.com
RYAN BRENTON
Florida Bar No. 107675
RBrenton@TheAmlongFirm.com

AMLONG & AMLONG, P.A.
500 Northeast Fourth Street
Second Floor
Fort Lauderdale, Florida 33301
(954) 462-1983

**Attorneys for Plaintiff,
          *Victor Igwe***