UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:15-cv-21603--LENARD

VICTOR IGWE,

    Plaintiff,

VS.

THE CITY OF MIAMI,

    Defendant.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS (D.E. 11) AND DISMSSING PLAINTIFF'S COMPLAINT (D.E. 1) WITH PREJUDICE

**THIS MATTER** is before the Court on the City of Miami's (hereinafter, "City" or "Defendant") Motion to Dismiss (D.E. 11), filed on September 8, 2015. Plaintiff filed his Response in Opposition (D.E. 18) on September 25, 2015; and the City replied (D.E. 19) on October 5, 2015. Having fully considered the Motion, and Response and Reply thereto, the Court finds as follows.

### I. BACKGROUND

Plaintiff began working for the City in 1999 as the Director of Internal Audits, and in 2003, was appointed to the position of Independent Auditor General ("IAG"). (D.E. 1 at ¶ 7.) The City Commission reappointed Plaintiff to his position as IAG on July 26, 2007, for another four-year term. (Id. at ¶ 9.) As part of his job, Plaintiff "conduct[ed] financial, operational, and audit compliance audits." (Id. at ¶ 10.) The duties and powers of the IAG are outlined at Section 48(c) of the City Charter. (Id.)

Beginning in 2010, the Securities and Exchange Commission ("SEC") initiated an investigation of the City for potentially violating "certain anti-fraud provisions of federal securities law by falsely portraying itself to the investment community as being financially solvent." (Id. at ¶ 11.)  The investigation was based, in part, on the Plaintiff's audit which purportedly exposed that the Defendant had used special-fund revenues to pay general-fund expenses and then covered it up. (Id.)  In April and November 2010, Plaintiff was subpoenaed to testify before the SEC and ultimately testified that the city had, among other things, "illegally transferred restricted revenues from capital project funds and other restricted-use funds to the City's General Revenue Fund in an effort to cover up the City's financial problems." (Id. at ¶ 13.)  In 2013, the SEC brought a five-count complaint against the City and its former budget manager for violating various provisions of the Securities and Exchange Act. (Id. at ¶ 14.)

During April 2011, Plaintiff's previous term as IAG expired and the City Commission declined to vote to reappoint him to another full term.  Instead they provisionally extended his term for sixty (60) days. (Id. at ¶ 15.)  In June 2011, the City Commission's Audit Advisory Committee unanimously recommended that Plaintiff be reappointed as IAG. (Id. at ¶ 21.)  However, shortly thereafter, on or about June 27, 2011, Plaintiff was terminated by City officials and escorted from his office. (Id. at ¶ 18.)

In August 2011, the Defendant publicly announced an opening for the position of IAG.  Plaintiff, who met all of the advertised requirements for the position, submitted his application in September 2011; however, on January 9, 2012, he received a rejection

letter.  (Id. at ¶ 22.)   Seventeen days after Plaintiff was rejected for the position, the City re-posted the position with a description including lower qualifications.  (Id. at ¶ 23.)

On October 25, 2011, Plaintiff filed a one-count complaint in the Eleventh Judicial Circuit Court for Miami-Dade County.  See Igwe v. City of Miami, 2011-035238-CA-01 (11th Jud. Cir. 2011).[1]  In the state court proceedings, Plaintiff alleged he was terminated in violation of Fla. Stat. § 112.3187(3)(c).  (Id.)  On March 3, 2015, Miami-Dade Circuit Judge John Schlesinger entered final summary judgment, dismissing Plaintiff's state law whistleblower claim.  (Id.)  Approximately two months later, Plaintiff initiated this lawsuit, asserting that Defendant fired him in violation of his First Amendment rights and the whistleblower protections established by the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank"), 15 U.S.C. § 78u-6 (2010).  (D.E. 1.)

Defendant responded by filing its Motion to Dismiss on September 8, 2015, arguing that Plaintiff's 15 U.S.C. § 78u-6 claim fails because: (1) Dodd-Frank's whistleblower provision does not apply to a municipal employer; (2) Dodd-Frank is not retroactive so any conduct that occurred before July 22, 2010 is not actionable; (3) the three year statute of limitations applies and expired before Plaintiff filed the instant suit; and (4) res judicata bars the Plaintiff from re-litigating the same alleged misconduct that was the subject of his state lawsuit. (D.E. 11.)  Defendant's Motion also asserts that Plaintiff's §1983/ First Amendment claim fails as a matter of law because: (1) the First Amendment does not protect a public employee's speech made in the course of his

---

[1] The state court docket can be found online at: https://www2.miami-dadeclerk.com/ocs/Search.aspx.

employment; (2) the City is only responsible for the acts of its employees if it had a custom or policy that deliberately disregarded the Plaintiff's constitutional rights and none of Plaintiff's allegations support such a finding; and (3) res judicata bars Plaintiff's First Amendment claim because he could have raised his constitutional claims in the previous state court action. (Id.)

Plaintiff replied, arguing that his termination occurred after the enactment of Dodd-Frank; Dodd-Frank's whistle-blower provision applies to municipal employers; Section 78u-6(h)(1)(B)(iii)(I)(bb)'s three year limitation is a tolling provision – not a statute of limitation; and causes of action pursuant to Dodd-Frank are exclusively federal and cannot be raised in state court. Plaintiff also argues that his § 1983/First Amendment claim survives because: (1) a public employee's testimony is protected speech if it is outside the scope of his ordinary job duties; and (2) he does not have to allege a custom or policy of deliberate indifference because the City, through its Commission, directly rather than vicariously violated his constitutional rights.

## II.    LEGAL STANDARDS

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss an action for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqubal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

"A formulaic recitation of the elements of the cause of action will not do," id. at 1949 (quoting Twombly, 550 U.S. at 555), and the allegations must include "more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." Iqubal 556 U.S. at 678. When considering whether a complaint should be dismissed, the Court accepts the facts alleged in the Complaint as true, and construes all reasonable inferences in the light most favorable to plaintiffs. See Bank v. Pitt, 928 F.2d 1108, 1109 (11th Cir. 1991).

### III.   ANALYSIS

#### A. Count One: Dodd-Frank Whistleblower Claim

Dodd–Frank was signed into law on July 21, 2010. Pub. L. No. 111–203 (Jul. 21, 2010). This sweeping piece of legislation aims to regulate our Nation's complex financial system. Of particular importance in this case are Dodd–Frank's amendments to the Securities Exchange Act of 1934, which "establish[ ] a corporate whistleblowing reward program, accompanied by a new provision prohibiting any employer from retaliating against 'a whistleblower' for providing information to the [Securities and Exchange Commission ("SEC")], participating in an SEC proceeding, or making disclosures required or protected under [the] Sarbanes–Oxley [Act of 2002] and certain other securities laws." Lawson v. FMR LLC, ––– U.S. ––––, 134 S.Ct. 1158, 1174 (2014) (citing 15 U.S.C. § 78u–6(a)(6), (b)(1), (h)). Specifically, Count One of the Complaint contends that the Defendant violated Dodd-Frank's whistleblower protection provisions by refusing to reappoint the Plaintiff after he provided information to the SEC.

The Defendant raises several reasons why it believes the Court should dismiss Plaintiff's Dodd-Frank claims. The Court will address each of these arguments in turn.

5

### 1. Applicability to Municipal Employers

The City argues that a municipality is not an employer within the meaning of U.S.C. § 78u-6(h):

> It is unclear whether [Dodd-Frank] applies in this instance because the City of Miami is neither a publicly traded company nor a subsidiary of a publicly traded company. Generally, the City of Miami does not qualify as a covered employer.

(D.E. 11 at 5.)  However, the City provides no legal authority to support its position that it does not qualify as an employer under Dodd-Frank.

Section 78u-6(h)(1)(A) provides that: "No employer may discharge, demote, suspend, threaten, harass, directly or indirectly, or in any other manner discriminate against, a whistleblower in the terms and conditions of employment because of any lawful act done by the whistleblower." (Emphasis added.)  While § 78u-6(a) does not specifically define the term employer, the plain text of § 78u-6(h)(1)(A) applies to all employers who retaliate against an employee for reporting misconduct to the SEC. Furthermore, it is well-established that municipalities can be sued for violating the Securities and Exchange Act.  See Sonnenfeld v. City & Cty. of Denver, 100 F.3d 744, 746 (10th Cir. 1996) (holding that the implied private cause of action under § 10b of the Securities and Exchange Act applies to municipalities); In re CitiSource, Inc., 694 F.Supp. 1069 (S.D. N.Y. 1988) (holding that the City of New York could be sued for misrepresenting material facts in violation of the Securities and Exchange Act).

Absent authority to the contrary, the undersigned will take Congress at its word: no employer, including the City of Miami, can retaliate against its employee for lawfully

reporting misconduct to the SEC. The Court holds that the private right of action created by § 78u-6(h) applies equally to municipal employers.

### 2. Retroactivity

Dodd-Frank was signed into law on July 21, 2010, and became effective the next day. Plaintiff was subpoenaed to testify before the SEC in November, 2010; and officials for the City of Miami terminated Plaintiff's employment on July 27, 2011. Therefore, the factual predicates for pleading a Dodd-Frank whistleblower claim occurred after the Act's effective date of July 22, 2010. Accordingly, the City's retroactivity argument runs counter to the factual allegations contained in the Complaint.

### 3. Statute of Limitations

Defendant argues that Dodd-Frank whistleblower claims are limited by a three year statute of limitations and that Plaintiff's claims are time-barred. Plaintiff asserts that sub-subclause (I)(bb) of § 78u-6(h)(1)(B)(iii) is a statutory tolling provision – not a three year statute of limitations – and that he has six to ten years to file his claim. Whether sub-subclause (I)(bb) of § 78u-6(h)(1)(B)(iii) is a statute of limitation or a statutory tolling provision is a question of first impression in the Eleventh Circuit and has been sparsely addressed by courts in other circuits.

The Court will begin by reviewing the legal definitions and common understanding of statutes of limitation, statutes of repose, and statutory tolling provisions. Generally, "a statute of limitations creates 'a time limit for suing in a civil case, based on the date when the claim accrued.'" CTS Corp. v. Waldburger, 134 S. Ct. 2175, 2182, 189 L. Ed. 2d 62, reh'g denied, 135 S. Ct. 23, 189 L. Ed. 2d 874 (2014) (quoting Black's Law

Dictionary 1546 (9th ed. 2009)). "Statutes of limitations require plaintiffs to pursue 'diligent prosecution of known claims.'" Id. at 2183. There is a distinct difference between statutes of limitations and statutes of repose:

> A statute of limitations normally governs the time within which legal proceedings must be commenced after the cause of action accrues.... A statute of repose, however, limits the time within which an action may be brought and is not related to the accrual of any cause of action. The injury need not have occurred, much less have been discovered.

Bradway v. Am. Nat. Red Cross, 992 F.2d 298, 301 (11th Cir. 1993) (citations omitted). A statute of repose is "based solely upon the passage of time," Moore v. Walter Coke, Inc., No. 2:11-CV-1391-SLB, 2012 WL 4731255, at *3 (N.D. Ala. Sept. 28, 2012); whereas a statute of limitation depends upon the accrual of a claim based on factors such as notice, knowledge or discovery, id. Unlike statutes of limitation or repose, a tolling provision extends or revives a limitations period based upon the occurrence of a subsequent event.

Having reviewed the basic differences between statutes of limitation, statutory tolling provisions, and statutes of repose, the Court will now turn to the statutory text. Sections 78u-6(h)(1)(B)(iii)(I) and (II) provide for three potential limitations periods for whistleblower claims under Dodd-Frank. First, sub-subclause (I)(aa) provides that "An action under this subsection may not be brought more than 6 years after the date on which the violation of subparagraph (A) occurred." The Supreme Court recently held that sub-subclause (I)(aa) is a statute of repose. CTS Corp., 134 S. Ct. at 2185. Second, sub-subclause (I)(bb) provides that "An action under this subsection may not be brought more

than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the employee alleging a violation of subparagraph (A)."[2] It is debatable whether this clause is a statute of limitations or statutory tolling provision. And finally, subclause (II) provides that: "Notwithstanding subclause (I), an action under this subsection may not in any circumstance be brought more than 10 years after the date on which the violation occurs." This subclause is also undoubtedly a statute of repose.

Courts "begin [their] construction of [a statutory provision] where [they] should always begin the process of legislative interpretation, and where they often should end it as well, which is with the words of the statutory provision." CBS Inc. v. PrimeTime 24 Joint Venture, 245 F.3d 1217, 1222 (11th Cir. 2001) (quoting Harris v. Garner, 216 F.3d 970, 972 (11th Cir. 2000) (en banc)). "When the words of a statute are unambiguous, then, this first canon [of statutory construction] is also the last: judicial inquiry is complete." Merritt v. Dillard Paper Co., 120 F.3d 1181, 1186 (11th Cir. 1997) (citation omitted). The rule is that "we must presume that Congress said what it meant and meant what it said." United States v. Steele, 147 F.3d 1316, 1318 (11th Cir.1998) (en banc) (citing Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253–54 (1992)). Here, § 78u-6(h)(1)(B)(iii)(I)(a) provides that "an action under this subsection may not be brought more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the employee alleging a violation of

---

[2] As noted, supra, Defendant argues that sub-subclause (I)(bb) is a statute of limitations which bars Plaintiff's claim and Plaintiff asserts that sub-subclause (bb) is a tolling provision that extends the six year statute of repose in sub-subclause (I)(aa).

subparagraph (A)." The plain language of this provision lends support to the City's argument that sub-subclause I(a) is a statute of limitations which bars a plaintiff from filing suit more than three years after the cause of action accrues. Under this construction, Plaintiff's Dodd-Frank claims are time-barred.[3]

However, even if § 78u-6(h)(1)(B)(iii)(I)(a) is a statutory tolling provision and the Plaintiff had six to ten years to file his cause of action,[4] his Dodd-Frank claims would still be barred by res judicata.

---

[3] The Court is aware of at least two other district courts that agree with this conclusion and have held that § 78u-6(h)(1)(B)(iii)(I)(bb) is a statute of limitations. See In U.S. ex rel. Griffith v. Conn, 117 F. Supp. 3d 961, 986 (E.D. Ky. 2015) (Thapar, J.) (the Court noted that § 78u-6 has a three (3) year statute of limitation which begins to run on "the date when facts material to the right of action are known or reasonably should have been known by the employee alleging a violation of subparagraph (A)."); Allstate Ins. Co. v. Zeefe, No. CV 5:15-159-KKC, 2016 WL 1071011, at *2 (E.D. Ky. Mar. 17, 2016) (Caldwell, C.J.) (holding that § 78u-6(h) has a three year statute of limitations).

[4] The Court recognizes that some courts and a few scholars have concluded that plaintiffs have six to ten years to bring Dodd-Frank whistleblower claims. See Asadi v. G.E. Energy (USA), L.L.C., 720 F.3d 620, 629 (5th Cir. 2013) (noting, albeit in dicta, that 15 U.S.C. § 78u–6(h)(1)(B)(iii) has a six to ten years limitations period); see also Julie Rose O'Sullivan, "Private Justice" and FCPA Enforcement: Should the Sec Whistleblower Program Include A Qui Tam Provision?, 53 Am. Crim. L. Rev. 67, 115 (2016) (noting that lawsuits must be brought within six years of the retaliation, or, if not initially apparent to the plaintiff that he has a cause of action, within three years of when the "facts material to the right of action are known or reasonably should have been known by the employee."); Thomas L. Hazen, Sarbanes–Oxley and Dodd-Frank Acts' Whistle–Blower Protections, 2 Law Sec. Reg. § 9:14 ("[T]he statute of limitations is significantly longer for Dodd–Frank whistleblower-protection claims – between six to ten years after the violation occurs."). Plaintiff's position is also supported by how other courts have construed similar limitations provisions in the False Claims Act. See, e.g., U.S. ex rel. Sanders v. North American Bus Industries, Inc., 546 F.3d 288, 293 (4th Cir. 2008); U.S. ex rel. Malloy v. Telephonics Corp., 68 Fed. Appx. 270, 273 (3d Cir. 2003); U.S. ex rel. Hyatt v. Northrop Corp., 91 F.3d 1211, 1214 (9th Cir. 1996). However, the Court need not definitely resolve this issue to dispose of this case.

### 4. Res Judicata/Claim-Splitting

The City argues that Plaintiff could have brought his Dodd-Frank whistleblower claim in his state court case; and by failing to do so, is barred by the doctrine of res judicata from raising his federal claim now.[5]  In response, Plaintiff asserts that § 78u–6(h) is an exclusively federal right of action and the state court lacked concurrent jurisdiction to entertain his Dodd-Frank claim.

There is a "deeply rooted presumption in favor of concurrent state court jurisdiction," over federal claims.  Tafflin v. Levitt, 493 U.S. 455, 459 (1990).  This presumption is "rebutted if Congress affirmatively ousts the state courts of jurisdiction over a particular federal claim."  Id.  "It is black letter law . . . that the mere grant of jurisdiction to a federal court does not operate to oust a state court from concurrent jurisdiction over the cause of action."  Id. (citing Gulf Offshore Co. v. Mobil Oil Corp., 453 U.S. 473, 479 (1981)).  Therefore, when a "grant of federal jurisdiction is plainly permissive, not mandatory," state courts have concurrent jurisdiction.  Id.

Section 78u–6(h)(B)(i) provides that: "An individual who alleges discharge or other discrimination in violation of subparagraph (A) may bring an action under this subsection in the appropriate district court of the United States for the relief provided in

---

[5] "Although res judicata is not a defense under Rule 12(b), it may be raised in a Rule 12(b)(6) motion where the existence of the defense can be determined from the face of the complaint." Johnson v. Girl Scouts of the USA, 596 F. App'x 797, 798 (11th Cir. 2015) (citing Concordia v. Bendekovic, 693 F.2d 1073, 1075 (11th Cir. 1982)). "When ruling on a Rule 12(b)(6) motion on grounds of res judicata, the district court should look at a copy of the state trial court's records, if they have been introduced into evidence. See id. (quoting Concordia, 693 F.2d at 1076) ("[a]dditional evidence, preferably a copy of the state trial court's records, is required in order to apply the doctrine of res judicata in the context of ... a Rule 12(b)(6) motion to dismiss"). In this case, Defendant has provided copies of the state court record, see Exhibits A-E, D.E. 11-1, 11-2, 11-3, 11-4, 11-5, which the Court has considered.

subparagraph (C)." (Emphasis added.)  When enacting § 78u–6(h)(B)(i), Congress used permissive language which would ordinarily support concurrent state court jurisdiction. See Lane v. Cent. Bank of Ala., N.A., 756 F.2d 814 (11th Cir. 1985) ("[U]se of the permissive term 'may' is entirely consistent with the presumption of concurrent state court jurisdiction.").  However, § 78u–6(h)(B)(i)'s permissive language regarding jurisdiction over Dodd-Frank whistleblower claims is contradicted by the Security and Exchange Act's general grant of jurisdiction, codified at 15 U.S.C. § 78aa.

Section 78aa provides that: "The district courts of the United States shall have exclusive jurisdiction of violations of this chapter . . ., and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder." (Emphasis added.)  Courts have uniformly recognized that claims under the Securities Exchange Act – of which § 78u–6 is a component part – are exclusively federal per the legislative directive in § 78aa.  See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning, 136 S. Ct. 1562, 1569 (2016) ("If a complaint asserts a right of action deriving from the Exchange Act (or an associated regulation), the suit must proceed in federal court."); Tafflin, 493 U.S. at 471 (White, J., concurring) (noting Securities and Exchange Act provides for exclusive federal jurisdiction).  However, these courts have not addressed the apparent conflict between the permissive language in § 78u–6(h)(B)(i) and the mandatory language in § 78aa.

A few courts have, in passing, have noted that federal courts have exclusive jurisdiction over Dodd-Frank claims. See, e.g., Khazin v. TD Ameritrade Holding Corp., 773 F.3d 488, 490 (3d Cir. 2014) (noting the state court in the underlying case had

12

dismissed the plaintiff's whistleblower claims, holding that federal courts have exclusive jurisdiction over Dodd–Frank claims); Simons v. Ditto Trade, Inc., No. 14 C 309, 2014 WL 6488338, at *2 (N.D. Ill. Nov. 19, 2014) ("Dodd–Frank Wall Street Reform and Consumer Protection Act [] provides federal courts with exclusive jurisdiction."). However, these courts relied exclusively upon the language contained in § 78aa and did not consider the effect of § 78u–6(h)(B)(i)'s specific jurisdictional provision. Because there is a conflict between § 78aa (general jurisdictional grant in the Securities and Exchange Act) and § 78u–6(h)(B)(i) (the specific jurisdictional grant in the Dodd-Frank Act), this Court must apply traditional rules of statutory construction to glean the meaning of the statutes.

When reconciling conflicting statutes, "the rules of statutory construction provide that a specific statute will control over a general statute and a more recently enacted statute will control over older statutes."[6] Florida VirtualSchool v. K12, Inc., 773 F.3d 233, 239 (11th Cir. 2014) (internal citations omitted); see also Bloate v. United States, 559 U.S. 196, 226, 130 S. Ct. 1345, 1364, 176 L. Ed. 2d 54 (2010) (noting that specific statute language governs general statutory provisions when they conflict). In this case, § 78u–6(h)(B)(i)'s permissive jurisdictional grant is both newer and more specific than the mandatory jurisdictional provision delineated in § 78aa. Therefore, the rules of statutory construction support the conclusion that, when enacting Dodd-Frank in 2010, Congress

---

[6] Section 78aa provides that federal courts have exclusive jurisdiction over all provisions in Chapter 15. In contrast, the plain language of Section 78u–6, which is a part of Chapter 15, provides that federal and state courts have concurrent jurisdiction over Dodd-Frank whistleblower claims. These two statutes – one providing for exclusive jurisdiction and the other providing for concurrent jurisdiction – are in conflict.

13

intended that both state and federal courts could exercise jurisdiction over § 78u–6(h) claims. This construction is in harmony with the presumption – rooted in principles of federalism – that state courts have concurrent jurisdiction over federal claims. See Metro. Edison Co. v. Pennsylvania Pub. Util. Comm'n, 767 F.3d 335, 359 (3d Cir. 2014), cert. denied, 135 S. Ct. 2372 (2015) (citing Tafflin, 493 U.S. at 459). Based on the foregoing, the Court holds that the general (and older) language contained in § 78aa yields to the specific (and newer) language in § 78u–6(h)(B)(i). Accordingly, the permissive jurisdictional grant in § 78u–6(h)(B)(i) is controlling – meaning that state courts have concurrent jurisdiction to hear Dodd-Frank whistleblower claims.[7] Given this holding, the Court must now determine whether Plaintiff was required to bring his federal whistleblower claim as part of his 2011 state court case.

When a federal court is asked to give res judicata effect to a prior state court judgment, the federal court applies the res judicata principles of the state from which the allegedly preclusive ruling emanates. See Kizzire v. Baptist Health Sys., Inc., 441 F.3d 1306, 1308 (11th Cir. 2006) (citing Amey, Inc. v. Gulf Abstract & Title, Inc., 758 F.2d 1486, 1509 (11th Cir. 1985)); see also Beepot v. J.P. Morgan Chase Nat. Corp. Servs., Inc., 57 F. Supp. 3d 1358, 1369 (M.D. Fla. 2014), aff'd sub nom. Beepot v. JP Morgan Chase Nat. Corp. Servs., Inc., 626 F. App'x 935 (11th Cir. 2015) ("When a suit is

---

[7] The Court "must assume that Congress carefully select[s] and intentionally adopt[s] the language" that it chooses to employ in a statute. Ebben v. IRS, 783 F.2d 906, 916 (9th Cir. 1986). Congress used the mandatory term "shall" in § 78aa; but later employed the permissive term "may" in § 78u–6(h)(B)(i). The distinction between these terms have acquired significant jurisdictional meaning of which Congress was certainly aware. Therefore, the Court must conclude that its use of permissive language in § 78u–6(h)(B)(i) was purposeful.

brought under federal question jurisdiction, and the federal court 'is asked to give res judicata effect to a state court judgment, it must apply the res judicata principles of the law of the state whose decision is set up as a bar to further litigation.'"). In Florida, res judicata precludes "re-litigation of claims that were raised and determined in the original litigation or that <u>could have been</u> properly raised and determined in the original litigation." <u>Certex USA, Inc. v. Vidal</u>, 706 F. Supp. 2d 1291, 1293 (S.D. Fla. 2010) (citing <u>Dadeland Depot, Inc. v. St. Paul Fire and Marine Ins. Co.</u>, 945 So.2d 1216, 1235 (Fla. 2006)) (emphasis added).

Res judicata bars subsequent litigation when a judgment on the merits is reached in a prior suit and there is: "(1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of the persons and parties to the action; and (4) identity of the quality [or capacity] of the persons for or against whom the claim is made." <u>The Fla. Bar v. St. Louis</u>, 967 So.2d 108, 119 (Fla. 2007). In Florida, res judicata precludes a party from splitting his causes of action when they could have been brought in one suit. <u>See</u>, <u>e.g.</u>, <u>Pollitz v. Halifax Health</u>, No. 6:15-CV-450-ORL-37, 2015 WL 4987732, at *2 (M.D. Fla. Aug. 19, 2015) (quoting <u>Dep't of Agric. & Consumer Servs. v. Mid–Florida Growers, Inc.</u>, 570 So.2d 892, 901 (Fla. 1990)) ("Federal courts recognize Florida's rule against splitting causes of action, which 'flows from the doctrine of res judicata' and 'makes it incumbent upon plaintiffs to raise all available claims involving the same circumstances in one action.'"); <u>Del Pino v. AT & T Info. Sys., Inc.</u>, 921 F. Supp. 761, 766 (S.D. Fla. 1996) (citing <u>New River Yachting Center v. Bacchiocchi</u>, 407 So.2d 607, 609 (Fla. 4th DCA 1981)) ("The doctrine of res judicata precludes claim-splitting and protects litigants

15

from vexatious relitigation of claims that could have been brought together with other claims that arose from the same facts and circumstances."); see also Moore v. Potter, No. 3:04CV-1057J32HTS, 2006 WL 2092277, at *5 (M.D. Fla. July 26, 2006) (citing Jang v. United Technologies Corp., 206 F.3d 1147, 1149 (11th Cir. 2000)) ("the doctrine of res judicata prohibits parties from 'claim splitting,' that is filing a set of claims based on certain theories, then subsequently filing a second set of claims asserting the same operative facts under different legal theories once the first set of claims have proceeded to judgment.").

However, the general rule against splitting causes of action "does not apply when suit is brought in a court that does not have jurisdiction over all of a plaintiff's claims." See Aquatherm Indus., Inc. v. Florida Power & Light Co., 84 F.3d 1388, 1392 (11th Cir. 1996) (citing Restatement of Judgments (Second) § 25 cmt. e (1982) ("If ... the court in the first action would clearly not have had jurisdiction to entertain the omitted theory or ground ... then a second action in a competent court presenting the omitted theory or ground should be held not precluded.")); 18 Charles A. Wright, Arthur R. Miller, Edward H. Cooper, Federal Practice and Procedure: Jurisdiction § 4470 (1981) ("On balance, it seems better to reject claim preclusion" when jurisdiction is exclusively federal); see also Hayes v. Solomon, 597 F.2d 958, 984 (5th Cir.1979) (holding that "[t]he principle of res judicata which prohibits splitting a cause of action 'applies only to claims capable of recovery in the first action.'" (Citations omitted.)  Given the Court's holding, infra, that the state court had jurisdiction to hear Plaintiff's federal whistleblower claim, res judicta applies and bars him from raising his Dodd-Frank claim after Judge Schlesinger entered

16

final summary judgment in his state court case.  Cf. Desisto v. City of Delray Beach, 618 F. App'x 558, 559 (11th Cir. 2015).  To hold otherwise would give Plaintiff a second bite at the proverbial apple and would waste party and judicial resources.  Consequently, Plaintiff's 78u–6(h) must be dismissed.

### B.  Count Two: Section 1983/First Amendment Claim

The Court discussed, infra, the well-established rule which precludes claim-splitting.  State courts have concurrent jurisdiction over § 1983 claims for violations of constitutional rights.  See Felder v. Casey, 487 U.S. 131, 139 (1988); Allen v. McCurry, 449 U.S. 90, 96 (1980); Shell v. Schwartz, 357 F. App'x 250, 253 (11th Cir. 2009); Dorsey v. City of Detroit, 858 F.2d 338, 340-41 (6th Cir. 1988); Borges v. City of W. Palm Beach, 858 F. Supp. 174, 177, n.3 (S.D. Fla. 1993).  Therefore, Plaintiff could have brought his First Amendment claims as part of his state court law suit.  Consequently, the Judgment entered on March 3, 2015, by Judge Schlesinger has preclusive effect and Plaintiff is barred from re-litigating his claims arising out of his 2011 termination by the City of Miami.

### IV.  CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that:

1. Defendant's Motion to Dismiss (D.E. 11), filed on September 8, 2015, is **GRANTED**;
2. Plaintiff's Complaint (D.E. 1) is **DISMISSED WITH PREJUDICE**;
3. This case is now **CLOSED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 29th day of September, 2016.

/s/ Joan A. Lenard
**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**